**FILED**
**CLERK**

9/30/2016

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RAKILA MOHAMED,

           Plaintiff,

   -against-

WORLD SAVINGS BANK, FSB; THE BANK
OF NEW YORK AS TRUSTEE FOR
SECURITIZED TRUST WORLD SAVINGS
BANK MORTGAGE PASS-THROUGH
CERTIFICATES REMIC 22 TRUST; WORLD
SAVINGS BANK, FSB; WELLS FARGO &
COMPANY,

           Defendants.
------------------------------------------------------------X

**OPINION AND ORDER**
15-cv-5934 (SJF)(AKT)

FEUERSTEIN, District Judge:

On October 15, 2015 *pro se* plaintiff Rakila Mohamed ("Plaintiff") commenced this action against defendants World Savings Bank, FSB ("WSB"), the Bank of New York as trustee for securitized trust World Savings Bank mortgage pass-through certificates REMIC 22 Trust (the "BNY Trust"), and Wells Fargo & Company ("Wells") (WSB, the BNY Trust, and Wells collectively, "Defendants") asserting a federal statutory and state common law claims arising out of a state court foreclosure action involving real property located in Deer Park, New York that Wells brought against Plaintiff. Defendants move to dismiss Plaintiff's complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. 32). For the following reasons, Defendants' motion is granted and Plaintiff's complaint is dismissed with prejudice.

I.  **BACKGROUND** [1]

Plaintiff is the owner of real property located at 388 Nicolls Road, Deer Park, New York 11729 (the "Property"). (Compl. ¶ 9). On December 23, 2005, Plaintiff obtained a loan in the amount of $125,000 from WSB, which was secured by a mortgage on the Property. (*Id.* ¶ 29; Affidavit of Andrew B. Messite ("Messite Aff.") (Dkt. 33), Ex. D). The loan was subsequently pooled with other mortgage loans and assigned to the BNY Trust. (Compl. ¶ 30, 63). In August 2010, after the BNY Trust had reassigned the mortgage back to Wells (as a successor of WSB), Wells commenced a foreclosure action against Plaintiff in New York State Supreme Court, Suffolk County, alleging that Plaintiff had defaulted on her loan payments (the "Foreclosure Action").[2] (Compl. ¶¶ 56-58; Messite Aff., Ex. B). On February 7, 2014, the New York State Supreme Court entered a judgment directing that the Property be sold in a foreclosure sale (the "Foreclosure Judgment"). (Messite Aff., Ex. C).

On October 15, 2015, Plaintiff commenced this litigation. (Dkt. 1). Plaintiff's claims can be grouped into three (3) categories: (1) claims seeking, in one manner or another, to overturn the Foreclosure Judgment; (2) claims that presume the wrongfulness of the Foreclosure Action and/or Foreclosure Judgment and assert that Plaintiff has sustained injuries as a result; and (3) claims attacking the underlying loan transaction. The claims in the first category are: (i)

---

[1] The facts set forth herein are derived from Plaintiff's complaint, the allegations of which are accepted as true for present purposes, other relevant documents that are incorporated by reference or are otherwise integral to the allegations in the complaint, and matters of which the Court takes judicial notice, including documents filed in other courts. *See, e.g., DiFolco v. MSNBC Cable LLC*, 662 F.3d 104, 111 (2d Cir. 2010); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

[2] *See* Verified Complaint filed in the New York State Supreme Court, Nassau County case bearing the following caption and index number: *Wells Fargo Bank, N.A. a/k/a Wachovia Mortgage f/k/a World Savings Bank, FSB v. Rakila Goberdhan a/k/a Rakila M. Mohamed et al.*, 28859/2010. (Messite Aff., Ex. B). While the machinations through which Plaintiff's mortgage changed hands are not presently important, for the sake of clarity, Defendants explain Wells' place in this dispute as follows: "[T]he loan was … originated by WSB, as a d/b/a of Wachovia Bank, which subsequently merged into Wells Fargo, N.A. The loan was assigned to the [BNY] Trust and then assigned back to WSB/Wachovia/Wells Fargo after Mohamed defaulted and Wells Fargo Bank, N.A. foreclosed." (Def. Mem. at 3, fn. 2).

a wrongful foreclosure claim premised on Defendants' alleged lack of standing to initiate the Foreclosure Action (Compl. ¶¶ 55-67 – First Cause of Action); (ii) a quiet title claim in which Plaintiff requests that the Court "enjoin defendants … from asserting any adverse claim to plaintiff's title to the [P]roperty" (Compl. ¶¶ 104-11 – Sixth Cause of Action); and (iii) a declaratory judgment claim seeking a ruling that, *inter alia*, "plaintiff is entitled to the exclusive possession of the [P]roperty" and Defendants "have no right … or interest in or to the [Property]" (Compl. ¶¶ 112-23 – Seventh Cause of Action).

The claims in the second category are: (i) an intentional infliction of emotional distress ("IIED") claim in which Plaintiff alleges that she "has suffered severe emotional distress, including but not limited to lack of sleep, anxiety, and depression" as a result of Defendants' "fraudulent[ ] attempt[ ] to foreclose … on a property in which they have no right, title, or interest" (Compl. ¶¶ 85-95 – Fourth Cause of Action); and (ii) a slander of title claim in which Plaintiff alleges that Defendants "disparaged Plaintiff's exclusive valid title by … preparing, posting, publishing, and recording … documents … including … the Notice of Default, Notice of Trustee's Sale, Trustee's Deed, and the documents evidencing the commencement of judicial foreclosure by a party who does not possess that right" (Compl. ¶¶ 96-103 – Fifth Cause of Action).

The claims in the third category are: (i) a "fraud in the concealment" claim in which Plaintiff alleges that "Defendants concealed the fact that the Loans were securitized as well as the terms of the Securitization Agreements," which "induced Plaintiff to enter into the loans…" (Compl. ¶¶ 68-76 – Second Cause of Action); (ii) a "fraud in the inducement" claim in which Plaintiff alleges that "Defendants[ ] intentionally misrepresented to Plaintiff [that they] were entitled to exercise the power of sale provision contained in the Mortgage / Deed of Trust" and

that "they are the 'holder and owner' of the Note and the beneficiary of the Mortgage / Deed of Trust," which "induced Plaintiff to enter into the loans" (Compl. ¶¶ 77-84 – Third Cause of Action); (iii) a claim that Defendants violated the Truth in Lending Act of 1968 ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, and the Home Ownership and Equity Protection Act of 1994 ("HOEPA"), 15 U.S.C. § 1639, "by failing to provide Plaintiff with accurate material disclosures required under TILA / HOEPA" (Compl. ¶¶ 124-33 – Eighth Cause of Action); (iv) a claim that Defendants violated the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. §§ 2601 *et seq.*, "because the payments between the Defendants were misleading and designed to create a windfall" (Compl. ¶¶ 134-40 – Ninth Cause of Action); and (v) a claim seeking rescission of "the loan and all accompanying loan documents" pursuant to TILA, 15 U.S.C. § 1635(f) (Compl. ¶¶ 141-45 – Tenth Cause of Action).

## II. DISCUSSION

### A. Legal Standards

#### 1. Rule 12(b)(1)

"[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (internal quotations omitted). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. System, Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (internal citations omitted). "While the court must generally take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, … jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Kim v. Korea Trade Promotion-Investment Agency*, 51 F. Supp. 3d 279, 283 (2d Cir. 2014)

4

(internal quotations omitted). Where a defendant moves to dismiss for lack of subject matter jurisdiction and for failure to state a claim, courts should generally address the issue of subject matter jurisdiction first. *See, e.g., Saint-Guillen v. U.S.*, 657 F. Supp. 2d 376, 380 (E.D.N.Y. 2009) ("Subject-matter jurisdiction is a threshold issue, and thus, where a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the court must address the 12(b)(1) motion first.") (internal citations omitted).

### 2. Rule 12(b)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), district courts "accept[ ] all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] complaint is not required to have 'detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). While a "*pro se* complaint is to be read liberally," and generally "should not [be] dismiss[ed] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Shomo*, 579 F.3d at 183 (internal quotations omitted), a court may dismiss a *pro se* plaintiff's first complaint with prejudice where it is "frivolous and leaves no doubt that plaintiff cannot allege facts sufficient to state a claim." *Coleman v. Suffolk County*, 154 Fed. App'x 250, 251 (2d Cir. 2005).

### B. *Rooker-Feldman*

Defendants argue that Plaintiff's complaint should be dismissed in its entirety because the Court lacks subject matter jurisdiction over this dispute under the *Rooker-Feldman* doctrine. (*See* Def. Mem. at 4-6). The *Rooker-Feldman* doctrine prohibits federal district courts from exercising subject matter jurisdiction over cases that would require the district court to conduct appellate review of a state court judgment. The doctrine is aimed at "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283 (2005). The Second Circuit has set forth four (4) requirements for the application of *Rooker-Feldman*: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (quoting *Hoblock v. Albany Cnty. Bd. of Elecs.*, 422 F.3d 77, 85 (2d Cir. 2005)) (internal quotation marks and alterations omitted). "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." *Hoblock*, 422 F.3d at 85.

Plaintiff lost the Foreclosure Action when the Foreclosure Judgment was entered against her in February 2014 and did not commence this action until October 2015, thus the two (2) procedural requirements are satisfied as to all of Plaintiff's claims. It is beyond question that the substantive requirements are also satisfied with respect to the first category of Plaintiff's claims – wrongful foreclosure, quiet title, and declaratory judgment – because with each of these claims Plaintiff is complaining of injuries sustained as a result of the Foreclosure Judgment (*i.e.*, losing

the Property through foreclosure) and is asking this Court to reject the Foreclosure Judgment (*i.e.*, to determine that Plaintiff has the sole right to continued possession of the Property). Accordingly, Plaintiff's wrongful foreclosure (First Cause of Action), quiet title (Sixth Cause of Action), and declaratory judgment (Seventh Cause of Action) claims are dismissed because this Court lacks subject matter jurisdiction to consider them under the *Rooker-Feldman* doctrine.

Plaintiff's IIED and slander of title claims are also barred by *Rooker-Feldman*. Plaintiff's IIED claim is that Defendants are "fraudulently attempting to foreclose … on [the Property] in which they have no right, title, or interest," which has caused Plaintiff "severe emotional distress, including but not limited to lack of sleep, anxiety, and depression." (Compl. ¶¶ 89, 92). Plaintiff's slander of title claim is that Defendants have "disparaged Plaintiff's exclusive valid title [to the Property] by … preparing, posting, publishing, and recording … documents" relating to the Foreclosure Action and the Foreclosure Judgment, which "Defendants knew or should have known … were improper in that at the time of the execution and delivery of said documents, Defendants had no right, title, or interest in the Property." (Compl. ¶¶ 97-98). Both the IIED and slander of title claims assert injuries arising out of the Foreclosure Judgment and ask this Court to reach a conclusion that directly contradicts the Foreclosure Judgment – namely, that Defendants have no right to or interest in the Property and may not proceed with a foreclosure sale. These "claims are 'inextricably intertwined' with the Foreclosure Action and 'would effectively require this Court to vacate the Foreclosure Judgment] issued by the New York State Supreme Court.' " *Andrews v. Citimortgage, Inc.*, No. 14-cv-1534, 2015 WL 1509511, at *4 (E.D.N.Y. March 31, 2015) (quoting *Estate of Keys v. Union Planters Bank, N.A.*, 578 F. Supp. 2d 629, 637 (S.D.N.Y. 2008)) (additional internal quotation marks, citations, and alterations omitted). Accordingly, Plaintiff's IIED (Fourth Cause of Action) and slander of

title (Fifth Cause of Action) are dismissed because this Court lacks subject matter jurisdiction to consider them under the *Rooker-Feldman* doctrine.

With respect to Plaintiff's claims challenging the underlying loan transaction, her "fraud in the concealment" and "fraud in the inducement" claims might be barred by *Rooker-Feldman*, but only to the extent that they challenge the validity of the underlying mortgage and seek a ruling that it was void. *See, e.g., Webster v. Wells Fargo Bank, N.A.*, No. 08-cv-10145, 2009 WL 5178654, at *6 (S.D.N.Y. Dec. 23, 2009) (fraud claim barred by *Rooker-Feldman* where plaintiffs "invite review and rejection of the foreclosure judgment because they ask this Court to hold that the subject mortgage is void based on fraud in the inducement"). To the extent Plaintiff is seeking a ruling that her mortgage is void due to fraud, her claims are barred by *Rooker-Feldman*. To the extent Plaintiff is seeking damages and rescission of her loan due to Defendants' alleged failure to comply with federal statutes intended to protect borrowers / mortgagors, her claims are not barred by *Rooker-Feldman*. However, as discussed below, each of these claims, as well as Plaintiff's fraud claims, are untimely.

**C.     Rule 12(b)(6) Arguments**

    **1.     Statute of Limitations** [3]

        a.     *Fraud Claims*

The statute of limitations for fraud claims in New York is "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff … discovered the fraud, or could with reasonable diligence have discovered it." N.Y. C.P.L.R. 213(8). Both of Plaintiff's fraud claims relate to the alleged lack of disclosure of the subject mortgage's terms at

---

[3] "Defenses based on statutes of limitations are properly brought under Rule 12(b)(6) as motions to dismiss for failure to state a claim on which relief can be granted." *Francis v. Blaikie Group*, 372 F. Supp. 2d 741, 743, n. 2 (S.D.N.Y. 2005).

the time Plaintiff obtained the loan in December 2005. (*See* Compl. ¶¶ 69, 78-79, 81). Plaintiff did not commence this action until October 2015 – nearly ten (10) years after she obtained the loan – and her complaint contains no allegations regarding discovery or diligence. Accordingly, her fraud claims are untimely. In any event, even if Plaintiff's fraud claims were timely, they are not viable (*see infra*).

        b.     *TILA / HOEPA Claims*

The purpose of TILA is to "assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit…" 15 U.S.C. § 160(a). HOEPA is a 1994 amendment to TILA intended "to address abusive practices in refinances and closed-end home equity loans with high interest rates or high fees." [4] Plaintiff's TILA / HOEPA claim is premised upon Defendants' alleged "fail[ure] to provide Plaintiff with accurate material disclosures" at the time of her loan transaction in 2005. (Compl. ¶ 26). Claims for damages under TILA / HOEPA are subject to a one (1)-year statute of limitations "from the date on which the first regular payment of principal is due under the loan." 15 U.S.C. § 1640(e); *see Tamir v. Bank of New York Mellon*, No. 12-cv-4780, 2013 WL 4522926, at *2 (E.D.N.Y. Aug. 27, 2013). Accordingly, Plaintiff's TILA / HOEPA claim (Eighth Cause of Action) is untimely and is dismissed with prejudice.

Plaintiff also seeks rescission of her loan under section 1635 of TILA. (Compl. ¶¶ 141-45). Section 1635(f) of TILA provides that "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the

---

[4] *See* http://files.consumerfinance.gov/f/201305_compliance-guide_home-ownership-and-equity-protection-act-rule.pdf

9

obligor...." 15 U.S.C. § 1635(f); *see also Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) ("§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period"). Plaintiff's loan closed in 2005 and she did not file this action until almost ten (10) years later. Accordingly, her TILA rescission claim (Tenth Cause of Action) is dismissed as untimely.

    c. *RESPA Claim*

RESPA prohibits, *inter alia*, giving or accepting a "fee, kickback, or thing of value" for a referral involving a "federally related mortgage loan." *See* 12 U.S.C. § 2607. The nature of Plaintiff's RESPA claim is elusive, but she alleges that it concerns "Defendants' failure to disclose that they will gain a financial benefit" in connection with "the loan product sold to Plaintiff" in 2005. (Compl. ¶ 137). The statute of limitations for private claims challenging impermissible fees or kickbacks under § 2607 is one (1) year "from the date of the occurrence of the violation." *See* 12 U.S.C. § 2614. Plaintiff did not commence this action until nearly ten (10) years after the loan closed in 2005. Accordingly, Plaintiff's RESPA claim (Ninth Cause of Action) is untimely and is dismissed with prejudice.

  2. **Viability of Fraud Claims**

Each of Plaintiff's fraud claims is, in essence, premised on the notion that Defendants failed to adequately inform Plaintiff of the possibility that her mortgage might be securitized and/or assigned when she entered the loan transaction in December 2005. (*See* Compl. ¶¶ 69, 78-79, 81). "The elements of fraud under New York law are: (1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (internal quotations and alterations omitted). "[S]uch a

claim must be pleaded with particularity." *Id.* (citing Fed. R. Civ. P. 9(b)). Plaintiff has failed to allege any misrepresentation concerning the potential securitization and/or assignment of her mortgage. Nor has she alleged that her injury (*i.e.*, losing the Property through foreclosure) was in any way caused by the securitization and/or assignment of her mortgage rather than her failure to make her loan payments, or that she would not have defaulted had her mortgage not been securitized and/or assigned. Accordingly, even if Plaintiff's fraud claims were timely, they must be dismissed on their merits.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is granted, and Plaintiff's complaint is dismissed with prejudice. The Clerk of the Court is directed to close this case and serve Plaintiff with a copy of this order.

**SO ORDERED.**

*s/ Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge

Dated: September 30, 2016
      Central Islip, New York